Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John W. Darrah | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 3768 | **DATE** | 9/14/2001 |
| **CASE TITLE** | NEWCOURT FINANCIAL USA, INC. vs. FT MORTGAGE COMPANIES, INC. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion And Order. Plaintiff's motion for summary judgment and defendant FT Mortgage's cross-motion for summary are denied.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | SEP 17 2001 date docketed | |
| | Notified counsel by telephone. | | | 47 |
| ✓ | Docketing to mail notices. | | CM docketing deputy initials | |
| | Mail AO 450 form. | | FILED FOR DOCKETING | |
| | Copy to judge/magistrate judge. | | 01 SEP 16 PM 3:53 date mailed notice | |
| LG | courtroom deputy's initials | Date/time received in central Clerk's Office | mailing deputy initials | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| NEWCOURT FINANCIAL USA, INC., ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> FT MORTGAGE COMPANIES INC., ) <br> ) <br> Defendant/Third-Party Plaintiff, ) <br> ) <br> v. ) <br> ) <br> COMPUTER ASSOCIATES INTERNATIONAL, ) <br> INC., ) <br> ) <br> Third-Party Defendant. ) | No. 00 C 3768 <br><br> Judge John W. Darrah |

## MEMORANDUM OPINION AND ORDER

Before this Court is plaintiff's, Newcourt Financial USA. Inc.'s (Newcourt), Motion for Summary Judgment and defendant/third-party plaintiff's, FT Mortgage Companies, Inc.'s (FT Mortgage), Cross-Motion for Summary Judgment.

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). All the evidence and the reasonable inferences that may be drawn from the evidence is viewed in the light most favorable to the nonmovant. *Miller v. American Family Mutual Ins. Co.*, 203 F.3d 997, 1003 (7th Cir. 2000).

The facts are somewhat tedious. On or about July 14, 1998, Platinum Technologies, Inc.

/1-1

(Platinum) entered into a Master Product License Agreement (MPLA) with FT Mortgage. (Def.'s 56.1(a)(3) Statement ¶ 5). On or about September 30, 1998, Platinum and FT Mortgage executed a Product Schedule and Addendum to the MPLA. (Id., at ¶¶ 6-7). On or about October 23, 1998, Platinum and FT Mortgage executed a second Addendum to the MPLA. (Id., at ¶ 8).

Pursuant to the Product Schedule, Platinum agreed to provide FT Mortgage certain computer software, a license to use certain software, and support for the use of that software. (Id., at ¶ 9). The Product Schedule contained a section entitled "Services" that referred to various "Statements of Work". (Plaint.'s 56.1(a)(3) ¶ 10). Under the Product Schedule, FT Mortgage was required to make five once-a-year installment payments of $463,000 to Platinum. (Def.'s 56.1(a)(3) Statement ¶ 10). In the Product Schedule, FT Mortgage acknowledged that "such [installment] payments, together with all related rights under the [MPLA] as it relates to this Schedule, are being assigned to Platinum Technology Financial Services ('PTFS')." (Id., at ¶ 11).

The Product Schedule further stated that:

> <u>PTFS may assign such payment, togther with all related rights, to a third party without notice to Customer [FT Mortgage]. Customer consents to such assignment and agrees that</u> (i) Platinum shall continue to remain and support described in the License Agreement under this Schedule, and (ii) PTFS (or its assignee) shall not be chargeable with or assume any of the obligations or liabilities of Platinum under the License Agreement. Customer further agrees that the License Agreement and this Schedule may not be terminated with <u>its respect to its obligation to pay in full to PTFS (or its assignee) all of the payments described ... and that its absolute and unconditional and not subject to any claims or defenses which Customer may have against Platinum.</u> (Def.'s 56.1(a)(3) Statement ¶ 13). (Emphasis added).

On or about November 25, 1998, Platinum assigned the MPLA to Newcourt. (Def.'s 56.1(a)(3) Statement ¶ 16). Newcourt paid Platinum the face amount of FT Mortgage's obligations

2

under the MPLA, less Newcourt's typical discount, to purchase the assignment of the MPLA. (Id., at ¶ 17).

On or about February 5, 1999, FT Mortgage tendered its first installment payment to Newcourt in the amount of $463,000. (Def.'s 56.1(a)(3) Statement ¶ 25). FT Mortgage has not made any subsequent payments to Newcourt, and all remaining amounts lawfully owed are immediately due and payable pursuant to the terms of the MPLA. (Id., at ¶¶ 14; 26-27).

Platinum is now known as Computer Associates International, Inc. (Computer Associates), the third-party defendant herein. Newcourt commenced an action against FT Mortgage, seeking to recover the monies due on the MPLA. Subsequently, FT Mortgage filed suit against Computer Associates, alleging breach of contract and indemnification.

The parties agree that the only issue before the Court is whether the waiver of defense clause in the underlying agreement between FT Mortgage and Computer Associates is enforceable under Article 9 of the Uniform Commercial Code (UCC). If the waiver of defense clause is enforceable, summary judgment in Newcourt's favor is appropriate. If the waiver of defense is not enforceable, summary judgment for neither Newcourt or FT Mortgage is appropriate because questions of fact remain as to whether an alleged breach of the contract between FT Mortgage and Computer Associates occurred.

Section 9-318 of the UCC, as adopted by Illinois, provides that "[u]nless an account debtor has made an enforceable agreement not to assert defenses or claims arising out of a sale as provided in Section 9-206 the rights of an assignee are subject to all the terms of the contract between the account debtor and assignor and any defense or claim arising therefrom." 810 ILCS 5/9-318. Section 9-206, in turn, provides: "an agreement by a buyer or lessee that he will not assert against

an assignee any claim or defense which he may have against the seller or lessor is enforceable by an assignee who takes his assignment for value, in good faith and without notice of a claim or defense...." 820 ILCS 5/9-206. Consequently, if Section 9-206 does not apply, a waiver of defense clause of a contract is unenforceable. *See* 820 ILCS 5/9-206; 5/9-318.

Newcourt's Motion for Summary Judgment is based on a theory that the waiver of defense clause is enforceable because the MPLA constitutes a lease of goods and is, therefore, chattel paper. As chattel paper, Sections 9-206 and 9-318 apply, and the waiver of defense clause is enforceable.

FT Mortgage argues that the contract between it and Computer Associates is a license and that the assignment constitutes an account; therefore, the UCC applies, but Section 9-206 does not apply, and the waiver of defense is not enforceable. Based on the parties' arguments, the Court must first determine if Article 9 of the UCC applies to the MPLA.

Chattel paper is defined as "a writing or writings which evidence both a monetary obligation and a security interest in or a lease of specific goods...." 810 ILCS 5/9-105(b). The parties do not dispute that the MPLA constitutes a monetary obligation but does not constitute a security interest.

Goods are defined as "all things which are movable at the time the security attaches...." 810 ILCS 5/9-104.

In the instant case, the Product Schedule states that both products and services were to be provided by Platinum. It is undisputed that Platinum was, in part, to provide custom software. Custom software has been considered a good under the UCC. *See Micro Data Base Systems, Inc. v. Dharma Systems, Inc.*, 148 F.3d 649, 654 (7th Cir. 1998); *Analysts Inter'l Corp. v. Recycled paper Prod., Inc.*, 1987 WL 12917 (N.D.Ill. June 19, 1987); *Communications Groups, Inc. v. Warner Comm. Inc.*, 527 N.Y.S.2d 341, 344 (1988). It is also undisputed that Platinum was to provide

services to FT Mortgage.

Where a sale or lease of goods also requires the sale or lease of services, Illinois classifies the agreement as "mixed" and requires the court to apply a "predominant purpose" test to determine whether the UCC governs the agreement. *NIM Plastics Corp. v. Standix Inter'l Corp.*, 11 F.Supp.2d 1003, 1005 (*NIM*). Under the predominate purpose test, the query is whether the purpose of the agreement is the rendition of services, with goods only incidently involved, or is a sale or lease of goods, with labor only incidentally involved. *NIM*, 11 F.Supp.2d at 1005. If the agreement's "primary purpose" is the sale or lease of goods, then the UCC is applicable to the entire agreement. *NIM*, 11 F.Supp.2d at 1005.

Here, the Product Schedule lists several "items" under the heading "Product/Service". However, there is no distinction whether the items listed are a product, service, or combination of product and service. The Product Schedule does identify $50,000 in "Training Credits" and a total of twenty-five weeks of "Support Days". Both the training and support days, which are discussed under the section identified as "Services", appear to be services and not goods. The parties do not offer any other undisputed facts concerning the items listed under "Product/Service" or what the training and "Support Days" constitute. Based on the Product Schedule and the lack of any other facts to explain the Product Schedule, it cannot be determined whether the primary purpose of the agreement was for goods or services. Accordingly, material questions of fact remain as to whether the agreement was for goods. As such, it cannot be determined whether the MPLA constitutes chattel paper to bring the parties' agreement within the UCC.

As mentioned above, FT Mortgage filed a cross-motion for summary judgment, seeking a determination that the waiver of defense clause is unenforceable and that it may assert the defense

5

that Computer Associates has acted in breach of the agreement and that payment is not due Newcourt thereunder. FT Mortgage argues that UCC applies because the assignment constitutes an account under the UCC. Furthermore, as an account, Section 9-206 does not apply; and the waiver of defense clause is not enforceable.

"'Account' means any right to payment for goods sold or leased or for services rendered which is not evidenced by an instrument or chattel paper." 810 ILCS 5/9-106. Based on the above finding that it cannot be determined whether the MPLA and Product Schedule constitute chattel paper, it cannot be determined whether the same constitutes an account.

In the alternative, Newcourt argues that the MPLA is an instrument; therefore, the UCC does not apply, and the waiver clause is enforceable under common law contract law.

An instrument is "a negotiable instrument ... or a certified security ... or any other writing which evinces a right to the payment of money and is not itself a security agreement or lease...." 810 ILCS 5/9-104(i). The parties dispute whether the MPLA and Product Schedule constitute a lease. A lease is defined as the "transfer of the right to possession and use of goods for a term in return for consideration..."

As discussed above, it cannot be determined whether the agreement is for goods or services. Therefore, it cannot be determined whether the agreement constituted a lease and subsequently, whether the agreement constituted an instrument.

In addition, material questions of fact remain whether the MPLA and Product Schedule had a term limitation. The "License Term" section of the Product Schedule states that the "term for each Product license shall be perpetual unless otherwise indicated..." However, a footnote asterisk (*) states: "During the 5 year term of this license...." None of the items listed under the Product/Service

6

heading contain an asterisk. Asterisks are found in the Product Schedule as follows: "License Fee: * Five Annual Payments of $488,00. See Attached."; "Five Year Maintenance * Inclusive. See Attached. (Non-Mainframe Products only)"; "Total: * Five Annual Payments of 488,00 Per attached". The parties provide no further evidence to explain the Product Schedule, what the footnote actually applies to, or how to reconcile the conflicting term statements. As such, questions of material fact exist whether the license/lease as a whole has a term or if certain licenses of certain products have a term. Accordingly, it cannot be determined whether the agreement constitutes a lease.

Based on the above findings, genuine issues of material fact exist whether the UCC applies to the parties' agreement, and summary judgment in either party's favor is not appropriate.

For the reasons stated above, Newcourt's Motion for Summary Judgment and FT Mortgage's Cross-Motion for Summary are denied.

Dated: 9-14-01

JOHN W. DARRAH
United States District Judge